Opinion filed November 4,
2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00167-CV 

                                                    __________

 

CHARLES MARTIN AND BENNY MARTIN, INDIVIDUALLY AND AS
INDEPENDENT COEXECUTORS OF THE ESTATE OF JUANITA WYCHE, DECEASED, AND SUCCESSOR
EXECUTORS OF THE ESTATE OF CHARLES D. WYCHE, DECEASED, Appellants

 

                                                             V.

 

SAGA PETROLEUM CORPORATION, SAGA PETROLEUM LLC, FOREST
OIL CORP. F/K/A FORCENERGY GAS CORP., KAB ACQUISITION L.P. II, WILLIAM H.
DORSEY, AND CHARLES E. FOX, Appellees



 

                                   On
Appeal from the 118th District Court

 

                                                          Howard
County, Texas

 

                                                      Trial
Court Cause No. 40881

 



 

                                                                  O
P I N I O N

            The
trial court entered summary judgment declaring that a production payment
designated as Production Payment “C” in a July 1, 1959, assignment of oil and
gas leases terminated with respect to four tracts of property.  Appellants Charles
Martin and Benny Martin, individually and as independent coexecutors of the estate
of Juanita Wyche, deceased, and as successor executors of the estate of Charles
D. Wyche, deceased, are successors-in-interest to one of the “Sellers” identified
in the assignment.  Appellees Saga Petroleum Corporation, Saga Petroleum LLC,
Forest Oil Corp. f/k/a Forcenergy Gas Corp., KAB Acquisition L.P. II, William
H. Dorsey, and Charles E. Fox are successors-in-interest to the “Buyer” identified
in the assignment.  In their sole appellate issue, appellants assert that the
trial court erred in granting summary judgment to appellees.  We reverse and remand
this cause to the trial court for further proceedings consistent with this
opinion.  

Background
Facts 

            On
July 1, 1959, Paul G. Wyche; Charles D. Wyche; H.L. Brinson; James M. Collins;
Charles S. Sharp; Carr P. Collins; Miles Woodall; and Carr P. Collins, Jr., as
“Sellers,” executed an assignment of oil and gas leases to Continental
Investors, Incorporated as “Buyer.”  In the assignment, the Sellers sold and
assigned their right, title, and interest in twelve oil, gas, and mineral
leaseholds, which were identified as tracts one through twelve, to Continental
Investors. This cause involves Tract 7 (L.C. Denman Lease), Tract 8 (TL & M
“A” and “B” Leases), Tract 9 (Percy Jones Lease), and Tract 10 (L.C. Denman “A”
Lease).  The Sellers retained and reserved certain production payments, including
the Tobe Foster Production Payment and Production Payment C.  The Tobe Foster
Production Payment included Production Payment A and Production Payment B.  Production
Payment A was a $1,000,000 production payment, and Production Payment B was a
$100,000 production payment.  Production Payment C (PPC) was to begin when the
obligation to make the Tobe Foster Production Payment terminated.     

            The
parties to the assignment estimated the reserves of oil and gas remaining in
the twelve tracts as follows:  (a) 11,330,000 barrels of oil and other liquid
hydrocarbons and (b) 914,640,000 cubic feet of gas, casinghead gas, and
other gaseous hydrocarbons.  The assignment provided that an additional
calculation of reserves would be performed if the Tobe Foster Production
Payment was retired: 

         Since it is
possible that said [PPC] may never become effective and since the parties
intend that if it does become effective it shall not continue as to any tract
for the duration of the economic life of the lease covering such tract, when
the Tobe Foster Production Payment has been retired, said parties, if they can
do so by mutual agreement, shall determine, separately as to each of the 12
tracts shown on Exhibit A, the number of barrels of liquid hydrocarbons and the
number of cubic feet of gaseous hydrocarbons that thereafter can be
commercially produced and saved from each of said 12 separate tracts.  In the
absence of such mutual agreement such determination shall be made in the manner
set out immediately below.

 

The parties then
set forth the procedure to be used for determining the reserves in the twelve
tracts in the absence of a mutual agreement.  The parties referred to the process
of determining the reserves when the Tobe Foster Production Payment terminated
as the “initial redetermination of reserves.”  At some point, the Tobe Foster
Production Payment terminated, and PPC commenced.  There is no evidence that
the parties to the assignment or their successors made an “initial redetermination
of reserves.”  The assignment provided the following with respect to PPC:

          From and
after the time said initial redetermination of reserves has been made in the
manner set forth above, [PPC], as to any tract to which it becomes effective,
shall continue in effect until, as to any particular tract, the earliest
occurrence of the following two alternatives, to-wit:

 

          1. there
remains in the ground and unproduced under said particular tract not less than
10% of the commercially recoverable reserves estimated in said initial
redetermination to have been in and under said particular tract.

 

         2. 15 years
from the Effective Date [July 1, 1974].

 

         At that
time there shall be one additional, which shall be the final, redetermination
of reserves under said particular tract, which redetermination shall be made in
accordance with the procedure above set out for the making of said initial
redetermination, and, from and after that time, said additional and final
redetermination of reserves shall be controlling [insofar] as the continuance
of [PPC] as to said particular tract is concerned.

 

There is no
evidence that the parties to the assignment or their successors made a “final
redetermination of reserves” as contemplated in the assignment.       

            The
assignment provided that PPC was to terminate “as to each of said 12 tracts,
severally, when as to any particular tract there remains unproduced 10% of the
commercially recoverable liquid and gaseous hydrocarbons in and under such
tract.”  Upon the termination of PPC in a tract, the interest that had been
burdened by PPC in that tract would pass to the Buyer under the terms of the
assignment.

            On
December 31, 1999, Fina Oil and Chemical Company filed this interpleader
action.  Fina alleged that it had purchased oil from Tracts 7, 8, 9, and 10;
that, as the purchaser of production from these tracts, it was obligated to pay
a share of the sales proceeds to various parties, including the owners of PPC
if PPC had not terminated; and that a dispute existed as to whether PPC had
terminated.  Fina also alleged that competing claims existed as to some of the
sales proceeds and that, therefore, it had held those proceeds in suspense.  Fina
interpleaded those proceeds into the registry of the court.

            On
November 30, 2007, appellees filed their joint motion for summary judgment.  They
sought a declaratory judgment that PPC had terminated as to Tract 7 (L.C.
Denman Lease), Tract 8 (TL & M “A” and “B” Lease), and Tracts 9 and 10 (referred
to collectively as the Denman A. Jones Lease).  They also sought a declaratory
judgment determining the proper allocation of funds that had been deposited
into the registry of the court.  To support their motion, appellees relied on
the affidavit of Kyle Huckaba, a petroleum engineer employed by appellee, Saga
Petroleum Corporation.  Huckaba stated in his affidavit that he had determined
“the amount of commercially recoverable reserves remaining under [the subject
tracts] as of July 1, 1974.”  In calculating the reserves, Huckaba used
information that was available as of July 1, 1974.   Huckaba also stated that
he had determined “the date (the 10% date) following July 1, 1974, when each of
[the subject leases and wells had] reached a point that there remained in the
ground and unproduced under each such tract 10% of the commercially recoverable
liquid and gaseous hydrocarbons in and under each such tract.”  Based on his
calculations, Huckaba concluded “that the 10% date” was reached on Tract 7
(L.C. Denman Lease) on or about December 2000, on Tract 8 (TL & M “A” and
“B” Leases) on or about December 1997, and on Tracts 9 and 10 (Denman A. Jones
Lease) on or about December 1991.  Huckaba also concluded that “there were no
commercially recoverable amounts of gas from any of said tracts as of July 1, 1974.” 
Based on Huckaba’s affidavit, appellees asserted that they were entitled to
summary judgment that PPC had terminated as to Tract 7 in December 2000, Tract
8 in December 1997, and Tracts 9 and 10 in December 1991.

            Appellants
filed a response to appellees’ joint motion for summary judgment.  In their
response, appellants relied on First City Nat’l Bank of Midland v. Concord
Oil Co., 808 S.W.2d 133 (Tex. App.—El Paso 1991, no writ).  In Concord
Oil, the El Paso court analyzed and interpreted the assignment that is the
subject of this appeal.  We will discuss Concord Oil in detail in our
analysis below.  In this cause, appellants opposed summary judgment on two
grounds: (1) that appellees, by their motion, sought “to circumvent the
specific provisions of the assignment in question as reaffirmed by the decision
in Concord Oil Company that specific procedures are to be utilized to
make a determination as to the termination date for [PPC]” and (2) that “[t]he
calculations utilized by [Huckaba were] incorrect because those calculations
[did] not encompass information obtainable after July, 1974 in direct
contravention of the Court of Appeals[’s] Opinion in Concord Oil Company.”

            Appellants
filed the affidavit of T. Scott Hickman, a petroleum engineer with fifty years experience,
in opposition to appellees’ motion.  Hickman stated in his affidavit that he
had been the president of T. Scott Hickman and Associates for the past
thirty-five years and that he had over thirty years experience evaluating the
PPC at issue in this cause.  He also stated that he had become familiar with
the El Paso court’s opinion in Concord Oil.  Hickman set forth the
following quote from Concord Oil:

         Construing
the assignment as a whole, the parties intended that a PPC would terminate when
there remained unproduced not less than 10 percent of the reserves that existed
on July 1, 1974.  The final redetermination provisions were included to allow
for any adjustment in the reserves determined by the initial determination that
was warranted by later information.

 

See Concord
Oil, 808 S.W.2d at 137.  Hickman stated that “Huckaba’s calculations of the
July 1, 1974 reserves and subsequent determination of the termination date of
PPC is, in my opinion, seriously flawed and grossly inadequate.”  He also
stated that Huckaba had not used “any information later than July 1, 1974,” and
that, therefore, Huckaba had failed to use “later information” as required by Concord
Oil.  Hickman further stated that actual production for the subject tracts
had been 50% greater than Huckaba’s reserve estimates for the tracts and that
all the tracts were still producing commercial quantities of oil and gas.  Hickman
concluded that, because Huckaba failed to use information that became available
after July 1, 1974, his calculations “greatly underestimate[d] the reserves and
thus ha[d] the effect of causing the termination of PPC to be many years too
early.”

            On
April 27, 2009, the trial court entered an order granting appellees’ joint
motion for summary judgment.  The trial court found that PPC terminated as to
the subject tracts as follows:   L.C. Denman (Tract 7) – December 2000; TL
& M “A” and “B” (Tract 8) – December 1997; and Denman A. Jones (Tracts 9
and 10) – December 1991.  The trial court also ordered the district clerk to
disburse the funds that had been paid into the registry of the court as specified
in the order.

Standard
of Review

            Appellees
filed a traditional motion for summary judgment. We apply the well-recognized
standard of review for traditional summary judgments. Questions of law are
reviewed de novo.  St. Paul Ins. Co. v. Tex Dep’t of Transp., 999 S.W.2d
881, 884 (Tex. App.—Austin 1999, pet. denied).  To determine if a fact question
exists, we must consider whether reasonable and fair-minded jurors could differ
in their conclusions in light of all the evidence presented.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  We must
consider all the evidence in the light most favorable to the nonmovant,
indulging all reasonable inferences in favor of the nonmovant, and determine
whether the movant proved that there were no genuine issues of material fact
and that it was entitled to judgment as a matter of law.  Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

Construction
of Assignment

            Neither
appellants nor appellees contend that the assignment is ambiguous, and we
conclude that the assignment is unambiguous.  See Lopez v. Munoz, Hockema
& Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000) (Where contract language
can be given a definite legal meaning and it is not reasonably susceptible to
more than one meaning, the contract is unambiguous.).  The construction of an
unambiguous contract is a question of law for the court.  Coker v. Coker,
650 S.W.2d 391, 393 (Tex. 1983); Worldwide Asset Purchasing, L.L.C. v.
Rent-A-Center E., Inc., 290 S.W.3d 554, 560 (Tex. App.—Dallas 2009, no
pet.); Concord Oil, 808 S.W.2d at 137.  When the parties disagree over
the meaning of an unambiguous contract, the court must determine the parties’
intent by examining and considering the entire writing in an effort to give effect
to and harmonize all provisions so that none will be rendered meaningless.  Coker,
650 S.W.2d at 393; Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.,
111 S.W.3d 187, 196 (Tex. App.—Texarkana 2003, pet. denied); Concord Oil,
808 S.W.2d at 137.

Analysis

            The
facts in this cause are similar to the facts in Concord Oil.  In that
case, the parties did not make an initial redetermination of reserves when the
Tobe Foster Production Payment terminated. Instead, in a 1969 letter agreement,
the parties agreed to waive the initial redetermination of reserves and to make
a final redetermination of reserves after July 1, 1974.  However, the parties
did not make such a final redetermination.  Concord Oil, 808 S.W.2d at
135.  The appellants in Concord Oil, which we will refer to collectively
as the Bank, were either original sellers under the assignment or
successors-in-interest of original sellers.  The appellee was Concord Oil, the successor-in-interest
of Continental Investors, the buyer under the assignment.  Id. at
134-35.  

            Concord
Oil sought a declaratory judgment that PPC had terminated on Tracts 11 and 12. 
The El Paso court explained that, alternatively, Concord Oil requested “an
order setting the procedure to be used by the parties to determine the
quantities of oil which could be commercially produced, based on the data
available in 1974 and 1975.”  Id. at 135-36.  The Bank requested a
declaratory judgment that PPC was still in effect on the tracts.  Id. at
136.  The trial court entered an order requiring that the parties attempt to
establish the reserves that existed in the subject tracts in a manner that followed
the procedure set forth in the assignment for establishing reserves.  The order
required that the parties try to determine, by mutual agreement, the total
reserves existing in the tracts on three different dates:  (1) July 1, 1974,
which was fifteen years from the effective date of the assignment; (2) December
20, 1985; and (3) August 17, 1989, which was the date of the trial
court’s order.  Id.  The parties each selected an engineer, and those
engineers agreed on a determination of gross oil reserves in barrels as follows:

Effective
Date      D.M. Womack (Tract 11)     J.C. Womack (Tract 12)

7/1/74                 
93,740 barrels                               273,368 barrels

12/20/85             
45,394 barrels                               132,526 barrels

8/17/89               
23,377 barrels                                 68,248 barrels

The trial court
concluded that July 1, 1974, was the proper date for determining the reserves. 
Id. The trial court entered a judgment declaring that PPC had not
terminated as to either of the tracts but would terminate when 90% of the oil
reserves existing on July 1, 1974, had been produced.  Thus, the trial court
concluded that PPC would terminate on Tract 11 when 84,366 barrels of oil had
been produced from the reserves of 93,740 barrels and on Tract 12 when
246,031.2 barrels of oil had been produced from the reserves of 273,368
barrels.  Id.     

            On
appeal, the Bank asserted that the trial court had erred in adopting July 1,
1974, as the final determination date.  The Bank argued that the trial court
should have adopted August 17, 1989, the date the trial court issued its order,
as the date for making the final determination of reserves and that the trial
court should have declared that PPC would not terminate until there remained unproduced
10% of the reserves that existed on August 17, 1989.  Concord Oil, 808
S.W.2d 136.  In a cross-point, Concord Oil asserted that the trial court had
erred in failing to determine that PPC had terminated on the tracts.  Concord
Oil argued that, under the terms of the assignment, PPC was to terminate when there
had been depletion of 90% of the reserves as estimated in the initial
redetermination, which the assignment provided would be made when the Tobe
Foster Production Payment terminated.  Therefore, Concord Oil contended that the
assignment required PPC to terminate when there remained unproduced 10% of the
reserves that existed in 1969 when the Tobe Foster Production Payment
terminated.  Id. at 136-37.    

            The
El Paso court disagreed with both parties’ positions.  Applying the rules relating
to the construction of unambiguous contracts to the assignment, the court concluded
that “the parties intended that a PPC would terminate when there remained
unproduced not less than 10 percent of the reserves that existed on July 1,
1974.”  Id. at 137.  Therefore, the court affirmed the trial court’s
judgment.  Id. at 139.  

            In
this cause, the parties agree that, under the terms of the assignment, PPC
terminates as to a particular tract when there remains unproduced from that
tract 10% of the reserves that existed on July 1, 1974.  However, they disagree
as to the information that the assignment allows to be used in determining those
reserves.  While appellees contend that the parties are limited to using
information that was available as of July 1, 1974, appellants contend that the
parties may also use information that became available after July 1, 1974.  Appellants
and appellees both rely on Concord Oil to support their respective
positions.

            Appellants
contend that the engineers in Concord Oil used post-July 1, 1974
engineering data in calculating the reserves that existed on July 1, 1974.  The
court stated in Concord Oil that “[t]he final determination provisions
were included to allow for any adjustment in the reserves determined by the
initial determination that was warranted by later information.” Concord Oil,
808 S.W.2d at 137.  Appellants rely on this statement in asserting that the El
Paso court’s interpretation of the assignment “made clear that information
obtained later than July 1, 1974, could be utilized to make a more accurate
determination as to the amount of reserves existing on July 1, 1974.” In fact,
appellants assert that Concord Oil requires that post-July 1, 1974 information
be used to determine the reserves that existed on July 1, 1974.

            Appellees
contend that appellants have taken the Concord Oil court’s reference to
“later information” out of context.  In contrast to appellants’ position,
appellees assert that the court in Concord Oil “clearly limited” the use
of “later information” to information that came into existence between the date
of the initial redetermination, which the assignment provided would be made
when the Tobe Foster Production Payment terminated, and the date of the final
redetermination, which the assignment provided would be performed, at the
latest, on July 1, 1974.  Therefore, appellees contend that Concord Oil
requires that only information existing as of July 1, 1974, be used in
determining the reserves.

            The
El Paso court did not state in Concord Oil that the engineers used
information that became available after July 1, 1974, in determining the July
1, 1974 reserves.  Based on a close reading of the facts set forth in Concord
Oil, we cannot conclude from the face of the opinion that the engineers
used post-July 1, 1974 information.  However, the opinion supports a reasonable
inference that the engineers used such information.  The engineers agreed on
reserves existing as of three dates: July 1, 1974; December 20, 1985; and
August 17, 1989.  Concord Oil, 808 S.W.2d at 136.  The opinion does not
indicate that the engineers used anything less than all available information, including
information that became available after these dates, when they performed their
reserve determinations.  Had the trial court ordered the engineers to limit the
information that they used for determining reserves for the three dates to
information existing on the respective dates or had the engineers limited the
information that they used in such a manner – that is, used three different
sets of information for determining the reserves – we expect that the El Paso court
would have stated such an important fact in its opinion.  

            As
stated above, the court in Concord Oil concluded that “the parties
intended that a PPC would terminate when there remained unproduced not less
than 10 percent of the reserves that existed on July 1, 1974.” Id. at
137.  As evidenced by Hickman’s affidavit, if current information is used to
determine the reserves that existed on July 1, 1974, the reserve determination
will be much more accurate than if only information that existed on July 1,
1974, is used.  Under this circumstance, allowing the parties to use current
information to determine the reserves is consistent with the parties’ intent as
expressed by the El Paso court.  An accurate reserve determination will
effectuate that intent.  Therefore, we conclude that Concord Oil and the
terms of the assignment allow the use of current information in determining the
reserves that existed on July 1, 1974.  However, even assuming that the holding
in Concord Oil does not support our conclusion, we reach the same result
based on the terms of the assignment. 

            The
trial court erred in granting summary judgment to appellees.  Appellants’ issue
is sustained.

This
Court’s Ruling

            The judgment
of the trial court is reversed, and this cause is remanded for proceedings
consistent with this opinion.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

                  
    

November 4, 2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.