**Opinion filed November 4, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00167-CV

_____

## CHARLES MARTIN AND BENNY MARTIN, INDIVIDUALLY AND AS INDEPENDENT COEXECUTORS OF THE ESTATE OF JUANITA WYCHE, DECEASED, AND SUCCESSOR EXECUTORS OF THE ESTATE OF CHARLES D. WYCHE, DECEASED, Appellants

## V.

## SAGA PETROLEUM CORPORATION, SAGA PETROLEUM LLC, FOREST OIL CORP. F/K/A FORCENERGY GAS CORP., KAB ACQUISITION L.P. II, WILLIAM H. DORSEY, AND CHARLES E. FOX, Appellees

On Appeal from the 118th District Court

Howard County, Texas

Trial Court Cause No. 40881

## O P I N I O N

The trial court entered summary judgment declaring that a production payment designated as Production Payment "C" in a July 1, 1959, assignment of oil and gas leases

terminated with respect to four tracts of property. Appellants Charles Martin and Benny Martin, individually and as independent coexecutors of the estate of Juanita Wyche, deceased, and as successor executors of the estate of Charles D. Wyche, deceased, are successors-in-interest to one of the "Sellers" identified in the assignment. Appellees Saga Petroleum Corporation, Saga Petroleum LLC, Forest Oil Corp. f/k/a Forcenergy Gas Corp., KAB Acquisition L.P. II, William H. Dorsey, and Charles E. Fox are successors-in-interest to the "Buyer" identified in the assignment. In their sole appellate issue, appellants assert that the trial court erred in granting summary judgment to appellees. We reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

*Background Facts*

On July 1, 1959, Paul G. Wyche; Charles D. Wyche; H.L. Brinson; James M. Collins; Charles S. Sharp; Carr P. Collins; Miles Woodall; and Carr P. Collins, Jr., as "Sellers," executed an assignment of oil and gas leases to Continental Investors, Incorporated as "Buyer." In the assignment, the Sellers sold and assigned their right, title, and interest in twelve oil, gas, and mineral leaseholds, which were identified as tracts one through twelve, to Continental Investors. This cause involves Tract 7 (L.C. Denman Lease), Tract 8 (TL & M "A" and "B" Leases), Tract 9 (Percy Jones Lease), and Tract 10 (L.C. Denman "A" Lease). The Sellers retained and reserved certain production payments, including the Tobe Foster Production Payment and Production Payment C. The Tobe Foster Production Payment included Production Payment A and Production Payment B. Production Payment A was a $1,000,000 production payment, and Production Payment B was a $100,000 production payment. Production Payment C (PPC) was to begin when the obligation to make the Tobe Foster Production Payment terminated.

The parties to the assignment estimated the reserves of oil and gas remaining in the twelve tracts as follows: (a) 11,330,000 barrels of oil and other liquid hydrocarbons and (b) 914,640,000 cubic feet of gas, casinghead gas, and other gaseous hydrocarbons. The assignment provided that an additional calculation of reserves would be performed if the Tobe Foster Production Payment was retired:

> Since it is possible that said [PPC] may never become effective and since the parties intend that if it does become effective it shall not continue as to any tract for the duration of the economic life of the lease covering such tract, when the Tobe Foster Production Payment has been retired, said parties, if they can do so by mutual agreement, shall determine, separately as to each of the 12 tracts shown on Exhibit A, the number of barrels of liquid hydrocarbons and the number of

2

cubic feet of gaseous hydrocarbons that thereafter can be commercially produced and saved from each of said 12 separate tracts. In the absence of such mutual agreement such determination shall be made in the manner set out immediately below.

The parties then set forth the procedure to be used for determining the reserves in the twelve tracts in the absence of a mutual agreement. The parties referred to the process of determining the reserves when the Tobe Foster Production Payment terminated as the "initial redetermination of reserves." At some point, the Tobe Foster Production Payment terminated, and PPC commenced. There is no evidence that the parties to the assignment or their successors made an "initial redetermination of reserves." The assignment provided the following with respect to PPC:

> From and after the time said initial redetermination of reserves has been made in the manner set forth above, [PPC], as to any tract to which it becomes effective, shall continue in effect until, as to any particular tract, the earliest occurrence of the following two alternatives, to-wit:
>
> 1. there remains in the ground and unproduced under said particular tract not less than 10% of the commercially recoverable reserves estimated in said initial redetermination to have been in and under said particular tract.
>
> 2. 15 years from the Effective Date [July 1, 1974].
>
> At that time there shall be one additional, which shall be the final, redetermination of reserves under said particular tract, which redetermination shall be made in accordance with the procedure above set out for the making of said initial redetermination, and, from and after that time, said additional and final redetermination of reserves shall be controlling [insofar] as the continuance of [PPC] as to said particular tract is concerned.

There is no evidence that the parties to the assignment or their successors made a "final redetermination of reserves" as contemplated in the assignment.

The assignment provided that PPC was to terminate "as to each of said 12 tracts, severally, when as to any particular tract there remains unproduced 10% of the commercially recoverable liquid and gaseous hydrocarbons in and under such tract." Upon the termination of PPC in a tract, the interest that had been burdened by PPC in that tract would pass to the Buyer under the terms of the assignment.

On December 31, 1999, Fina Oil and Chemical Company filed this interpleader action. Fina alleged that it had purchased oil from Tracts 7, 8, 9, and 10; that, as the purchaser of production from these tracts, it was obligated to pay a share of the sales proceeds to various parties, including the owners of PPC if PPC had not terminated; and that a dispute existed as to whether PPC had terminated. Fina also alleged that competing claims existed as to some of the sales proceeds and that, therefore, it had held those proceeds in suspense. Fina interpleaded those proceeds into the registry of the court.

On November 30, 2007, appellees filed their joint motion for summary judgment. They sought a declaratory judgment that PPC had terminated as to Tract 7 (L.C. Denman Lease), Tract 8 (TL & M "A" and "B" Lease), and Tracts 9 and 10 (referred to collectively as the Denman A. Jones Lease). They also sought a declaratory judgment determining the proper allocation of funds that had been deposited into the registry of the court. To support their motion, appellees relied on the affidavit of Kyle Huckaba, a petroleum engineer employed by appellee, Saga Petroleum Corporation. Huckaba stated in his affidavit that he had determined "the amount of commercially recoverable reserves remaining under [the subject tracts] as of July 1, 1974." In calculating the reserves, Huckaba used information that was available as of July 1, 1974. Huckaba also stated that he had determined "the date (the 10% date) following July 1, 1974, when each of [the subject leases and wells had] reached a point that there remained in the ground and unproduced under each such tract 10% of the commercially recoverable liquid and gaseous hydrocarbons in and under each such tract." Based on his calculations, Huckaba concluded "that the 10% date" was reached on Tract 7 (L.C. Denman Lease) on or about December 2000, on Tract 8 (TL & M "A" and "B" Leases) on or about December 1997, and on Tracts 9 and 10 (Denman A. Jones Lease) on or about December 1991. Huckaba also concluded that "there were no commercially recoverable amounts of gas from any of said tracts as of July 1, 1974." Based on Huckaba's affidavit, appellees asserted that they were entitled to summary judgment that PPC had terminated as to Tract 7 in December 2000, Tract 8 in December 1997, and Tracts 9 and 10 in December 1991.

Appellants filed a response to appellees' joint motion for summary judgment. In their response, appellants relied on *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133 (Tex. App.—El Paso 1991, no writ). In *Concord Oil*, the El Paso court analyzed and interpreted the assignment that is the subject of this appeal. We will discuss *Concord Oil* in

4

detail in our analysis below. In this cause, appellants opposed summary judgment on two grounds: (1) that appellees, by their motion, sought "to circumvent the specific provisions of the assignment in question as reaffirmed by the decision in *Concord Oil Company* that specific procedures are to be utilized to make a determination as to the termination date for [PPC]" and (2) that "[t]he calculations utilized by [Huckaba were] incorrect because those calculations [did] not encompass information obtainable after July, 1974 in direct contravention of the Court of Appeals['s] Opinion in *Concord Oil Company*."

Appellants filed the affidavit of T. Scott Hickman, a petroleum engineer with fifty years experience, in opposition to appellees' motion. Hickman stated in his affidavit that he had been the president of T. Scott Hickman and Associates for the past thirty-five years and that he had over thirty years experience evaluating the PPC at issue in this cause. He also stated that he had become familiar with the El Paso court's opinion in *Concord Oil.* Hickman set forth the following quote from *Concord Oil*:

> Construing the assignment as a whole, the parties intended that a PPC would terminate when there remained unproduced not less than 10 percent of the reserves that existed on July 1, 1974. The final redetermination provisions were included to allow for any adjustment in the reserves determined by the initial determination that was warranted by later information.

*See Concord Oil*, 808 S.W.2d at 137. Hickman stated that "Huckaba's calculations of the July 1, 1974 reserves and subsequent determination of the termination date of PPC is, in my opinion, seriously flawed and grossly inadequate." He also stated that Huckaba had not used "any information later than July 1, 1974," and that, therefore, Huckaba had failed to use "later information" as required by *Concord Oil*. Hickman further stated that actual production for the subject tracts had been 50% greater than Huckaba's reserve estimates for the tracts and that all the tracts were still producing commercial quantities of oil and gas. Hickman concluded that, because Huckaba failed to use information that became available after July 1, 1974, his calculations "greatly underestimate[d] the reserves and thus ha[d] the effect of causing the termination of PPC to be many years too early."

On April 27, 2009, the trial court entered an order granting appellees' joint motion for summary judgment. The trial court found that PPC terminated as to the subject tracts as follows: L.C. Denman (Tract 7) – December 2000; TL & M "A" and "B" (Tract 8) – December 1997; and Denman A. Jones (Tracts 9 and 10) – December 1991. The trial court also ordered the district

5

clerk to disburse the funds that had been paid into the registry of the court as specified in the order.

*Standard of Review*

Appellees filed a traditional motion for summary judgment. We apply the well-recognized standard of review for traditional summary judgments. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

*Construction of Assignment*

Neither appellants nor appellees contend that the assignment is ambiguous, and we conclude that the assignment is unambiguous. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000) (Where contract language can be given a definite legal meaning and it is not reasonably susceptible to more than one meaning, the contract is unambiguous.). The construction of an unambiguous contract is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 560 (Tex. App.—Dallas 2009, no pet.); *Concord Oil*, 808 S.W.2d at 137. When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to and harmonize all provisions so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187, 196 (Tex. App.—Texarkana 2003, pet. denied); *Concord Oil*, 808 S.W.2d at 137.

*Analysis*

The facts in this cause are similar to the facts in *Concord Oil*. In that case, the parties did not make an initial redetermination of reserves when the Tobe Foster Production Payment terminated. Instead, in a 1969 letter agreement, the parties agreed to waive the initial redetermination of reserves and to make a final redetermination of reserves after July 1, 1974.

6

However, the parties did not make such a final redetermination. *Concord Oil*, 808 S.W.2d at 135. The appellants in *Concord Oil*, which we will refer to collectively as the Bank, were either original sellers under the assignment or successors-in-interest of original sellers. The appellee was Concord Oil, the successor-in-interest of Continental Investors, the buyer under the assignment. *Id.* at 134-35.

Concord Oil sought a declaratory judgment that PPC had terminated on Tracts 11 and 12. The El Paso court explained that, alternatively, Concord Oil requested "an order setting the procedure to be used by the parties to determine the quantities of oil which could be commercially produced, based on the data available in 1974 and 1975." *Id.* at 135-36. The Bank requested a declaratory judgment that PPC was still in effect on the tracts. *Id.* at 136. The trial court entered an order requiring that the parties attempt to establish the reserves that existed in the subject tracts in a manner that followed the procedure set forth in the assignment for establishing reserves. The order required that the parties try to determine, by mutual agreement, the total reserves existing in the tracts on three different dates: (1) July 1, 1974, which was fifteen years from the effective date of the assignment; (2) December 20, 1985; and (3) August 17, 1989, which was the date of the trial court's order. *Id.* The parties each selected an engineer, and those engineers agreed on a determination of gross oil reserves in barrels as follows:

| Effective Date | D.M. Womack (Tract 11) | J.C. Womack (Tract 12) |
| --- | --- | --- |
| 7/1/74 | 93,740 barrels | 273,368 barrels |
| 12/20/85 | 45,394 barrels | 132,526 barrels |
| 8/17/89 | 23,377 barrels | 68,248 barrels |

The trial court concluded that July 1, 1974, was the proper date for determining the reserves. *Id.* The trial court entered a judgment declaring that PPC had not terminated as to either of the tracts but would terminate when 90% of the oil reserves existing on July 1, 1974, had been produced. Thus, the trial court concluded that PPC would terminate on Tract 11 when 84,366 barrels of oil had been produced from the reserves of 93,740 barrels and on Tract 12 when 246,031.2 barrels of oil had been produced from the reserves of 273,368 barrels. *Id.*

On appeal, the Bank asserted that the trial court had erred in adopting July 1, 1974, as the final determination date. The Bank argued that the trial court should have adopted August 17, 1989, the date the trial court issued its order, as the date for making the final determination of

reserves and that the trial court should have declared that PPC would not terminate until there remained unproduced 10% of the reserves that existed on August 17, 1989. *Concord Oil*, 808 S.W.2d 136. In a cross-point, Concord Oil asserted that the trial court had erred in failing to determine that PPC had terminated on the tracts. Concord Oil argued that, under the terms of the assignment, PPC was to terminate when there had been depletion of 90% of the reserves as estimated in the initial redetermination, which the assignment provided would be made when the Tobe Foster Production Payment terminated. Therefore, Concord Oil contended that the assignment required PPC to terminate when there remained unproduced 10% of the reserves that existed in 1969 when the Tobe Foster Production Payment terminated. *Id.* at 136-37.

The El Paso court disagreed with both parties' positions. Applying the rules relating to the construction of unambiguous contracts to the assignment, the court concluded that "the parties intended that a PPC would terminate when there remained unproduced not less than 10 percent of the reserves that existed on July 1, 1974." *Id.* at 137. Therefore, the court affirmed the trial court's judgment. *Id.* at 139.

In this cause, the parties agree that, under the terms of the assignment, PPC terminates as to a particular tract when there remains unproduced from that tract 10% of the reserves that existed on July 1, 1974. However, they disagree as to the information that the assignment allows to be used in determining those reserves. While appellees contend that the parties are limited to using information that was available as of July 1, 1974, appellants contend that the parties may also use information that became available after July 1, 1974. Appellants and appellees both rely on *Concord Oil* to support their respective positions.

Appellants contend that the engineers in *Concord Oil* used post-July 1, 1974 engineering data in calculating the reserves that existed on July 1, 1974. The court stated in *Concord Oil* that "[t]he final determination provisions were included to allow for any adjustment in the reserves determined by the initial determination that was warranted by later information." *Concord Oil*, 808 S.W.2d at 137. Appellants rely on this statement in asserting that the El Paso court's interpretation of the assignment "made clear that information obtained later than July 1, 1974, could be utilized to make a more accurate determination as to the amount of reserves existing on July 1, 1974." In fact, appellants assert that *Concord Oil* requires that post-July 1, 1974 information be used to determine the reserves that existed on July 1, 1974.

8

Appellees contend that appellants have taken the *Concord Oil* court's reference to "later information" out of context. In contrast to appellants' position, appellees assert that the court in *Concord Oil* "clearly limited" the use of "later information" to information that came into existence between the date of the initial redetermination, which the assignment provided would be made when the Tobe Foster Production Payment terminated, and the date of the final redetermination, which the assignment provided would be performed, at the latest, on July 1, 1974. Therefore, appellees contend that *Concord Oil* requires that only information existing as of July 1, 1974, be used in determining the reserves.

The El Paso court did not state in *Concord Oil* that the engineers used information that became available after July 1, 1974, in determining the July 1, 1974 reserves. Based on a close reading of the facts set forth in *Concord Oil*, we cannot conclude from the face of the opinion that the engineers used post-July 1, 1974 information. However, the opinion supports a reasonable inference that the engineers used such information. The engineers agreed on reserves existing as of three dates: July 1, 1974; December 20, 1985; and August 17, 1989. *Concord Oil*, 808 S.W.2d at 136. The opinion does not indicate that the engineers used anything less than all available information, including information that became available after these dates, when they performed their reserve determinations. Had the trial court ordered the engineers to limit the information that they used for determining reserves for the three dates to information existing on the respective dates or had the engineers limited the information that they used in such a manner – that is, used three different sets of information for determining the reserves – we expect that the El Paso court would have stated such an important fact in its opinion.

As stated above, the court in *Concord Oil* concluded that "the parties intended that a PPC would terminate when there remained unproduced not less than 10 percent of the reserves that existed on July 1, 1974." *Id.* at 137. As evidenced by Hickman's affidavit, if current information is used to determine the reserves that existed on July 1, 1974, the reserve determination will be much more accurate than if only information that existed on July 1, 1974, is used. Under this circumstance, allowing the parties to use current information to determine the reserves is consistent with the parties' intent as expressed by the El Paso court. An accurate reserve determination will effectuate that intent. Therefore, we conclude that *Concord Oil* and the terms of the assignment allow the use of current information in determining the reserves that existed on

9

July 1, 1974. However, even assuming that the holding in *Concord Oil* does not support our conclusion, we reach the same result based on the terms of the assignment.

The trial court erred in granting summary judgment to appellees. Appellants' issue is sustained.

*This Court's Ruling*

The judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.


TERRY McCALL

JUSTICE


November 4, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.