

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00116-CV

_____

MJR OIL & GAS 2001 LLC, Appellant

V.

ARIESONE, LP, GFP TEXAS, INC., MIKEN OIL, INC.,
AND SND ENERGY COMPANY, INC., Appellees

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2016-1054-CCL2

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

OPINION

This dispute is about a right of first refusal (ROFR) in certain oil and gas leases on various properties located in Gregg and Rusk Counties. It is undisputed that a ROFR in favor of MJR Oil & Gas 2001 LLC (MJR) is contained in a May 2002, unrecorded Settlement and Release Agreement (the Settlement Agreement) between two groups of owners of an oil company, including MJR and Energy 2000, Inc. (Energy). At issue in this case is whether MJR's ROFR is a covenant running with the land, and therefore enforceable against the assignees and successors in interest to Energy: AriesOne, LP (AriesOne), GFP Texas, Inc. (GFP), Miken Oil, Inc. (Miken), and SND Energy Company, Inc. (SND) (collectively, Appellees). The trial court held that it was not a covenant running with the land and entered summary judgments in favor Appellees on that basis.[1] The trial court also denied MJR's motion for partial summary judgment against AriesOne, which asked for summary judgment against AriesOne on liability and contended that the ROFR was a covenant running with the land. After the parties agreed to non-suit all other claims and counterclaims, the trial court entered a final judgment in favor of Appellees.

On appeal, MJR contends that the trial court erred in holding that the ROFR was not a covenant running with the land and asks us to reverse the trial court's rulings. We agree that the trial court erred in granting the motion for summary judgment in favor of Appellees.

_____

[1]The trial court's summary judgment in favor of GFP, Miken, and SND specifically stated that it was granted on the basis that the ROFR was not a covenant running with the land. The trial court did not state the basis of its traditional summary judgment in favor of AriesOne.

## I. Standard of Review

"We review the trial court's summary judgment de novo." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). In our review, all evidence favorable to the non-movant is deemed true, and every reasonable inference and any doubts are resolved in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant is entitled to summary judgment on a claim only when it conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

When, as in the case of AriesOne, both sides file motions for summary judgment and the trial court grants one motion and denies the other, we consider both sides' summary judgment evidence and determine all questions presented, and if the trial court erred, we render the judgment the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

3

## II.    The Summary Judgment Evidence

MJR's ROFR appears in the Settlement Agreement, which was executed May 5, 2002. The Settlement Agreement arose out of a lawsuit filed in the County Court at Law No. 3 of Dallas County between MJR and others (referred to collectively in the Settlement Agreement as the Ryan Parties), Energy and others (referred to collectively in the Settlement Agreement as the Dickerson Parties), and Ascend Oil & Gas, L.L.C. (Ascend), over the ownership and operation of Ascend and certain oil and gas properties. Under the Settlement Agreement, the various parties agreed to convey all of their interest in the oil and gas properties to Energy, and Energy agreed to convey varying overriding royalty interests (ORRI) in certain oil and gas properties to MJR. The Settlement Agreement also contained a section that set forth the continuing obligations of Energy to MJR.[2] These obligations included the actions Energy would take to insure the proper and prompt payment of the overriding royalties for any production from the oil and gas properties to MJR, and also included a ROFR that provided:

> [Energy] shall advise MJR within ten business (10) days of any assignment, farmout, sale or transfer of any property, lease, or well in which MJR has any interest and shall give MJR a [ROFR] to purchase such interest upon the same terms as offered to [Energy] by a bona fide third party. If MJR does not agree to purchase such interest within ten (10) days, [Energy] shall advise the new operator and/or transferee of MJR's overriding royalty interest. As a condition precedent to the transfer, any transferee shall be required to agree to be bound by the obligations to MJR contained in this agreement as it pertains to any interest transferred and give MJR evidence of same.

---

[2]Although the section refers to the continuing obligations of the Dickerson Parties to the Ryan Parties, the only member of the Dickerson Parties relevant to this case is Energy, and the only member of the Ryan Parties relevant to this case is MJR.

The Settlement Agreement also provided, "This Agreement shall be binding upon and inure to the benefit of the parties, and all of their respective assigns, successors, agents, servants, employees, insurers, and legal representatives."

On the same day, Energy executed an Assignment of Overriding Royalty Interest, effective as of May 1, 2002 (the ORRI Assignment) to MJR that conveyed varying ORRI in certain oil and gas properties, including some, but not all,[3] of the oil and gas leases in dispute in this case.[4] After setting forth the varying ORRI and their definition, the ORRI Assignment stated:

> ASSIGNOR (Energy) further hereby irrevocably consents to, allows and directs any and all current and future purchasers of production from these properties and leases to issue Division Orders to ASSIGNEE (MJR) or ASSIGNEE's designee covering this overriding royalty interest and to pay ASSIGNEE or ASSIGNEE's designee directly for its royalty interest. ASSIGNOR agrees that this obligation is a covenant running with the land and any transfer by ASSIGNOR, its successors or assigns must include this right of direct payment as well as all the accounting obligations set out in the Settlement and Release Agreement executed this date by ASSIGNEE and ASSIGNOR and any assignee or successor in interest must agree to be bound by the terms of the Settlement and Release Agreement as a condition precedent to the transfer of any of the Properties.

The ORRI Assignment also provided, "The terms of this Assignment will be binding upon the parties, and upon their respective successors and assigns."[5]

---

[3]For instance, in its Schedule of Leases (MJR's Schedule of Leases) attached to its Second Amended Complaint, MJR listed a Della Crim Lease, RRC No. 07947, in Rusk County. However, this lease does not appear in the attachments to the ORRI Assignment. MJR's Schedule of Leases also listed the Finney Lease, RRC No. 08192, and the J.M. Finney Lease, RRC No. 07437, both in Rusk County. However, it appears that although listed twice, only one Finney lease, from a Julia Finney as lessor, is described in the attachments to the ORRI Assignment. Nothing in the summary judgment evidence explains this discrepancy.

[4]A fully executed copy of the ORRI Assignment was attached to the Settlement Agreement as Exhibit 2.

[5]It is undisputed that the ORRI Assignment, and all assignments referenced hereafter, were recorded in both Gregg County and Rusk County.

5

Within a few months, Energy conveyed its interests in the various oil and gas properties, including some of the leases in dispute in this case,[6] to Gaywood Oil & Gas, L.L.C. (Gaywood), in an Assignment of Lease and Bill of Sale (the Energy Assignment) on October 1, 2002.[7] The Energy Assignment does not contain any direct or indirect reference to the ORRI Assignment or the Settlement Agreement.

By Assignment and Bill of Sale effective December 10, 2010, Gaywood conveyed its interests in certain oil and gas properties in Gregg and Rusk Counties to GFP (the Gaywood Assignment). The Gaywood Assignment included all of the oil and gas leases in dispute in this case, except the Tuttle-A- Lease, RRC 06167.[8] Although it did not directly refer to the ORRI Assignment or the Settlement Agreement, the Gaywood Assignment provided that it was made by Gaywood and accepted by GFP

subject to the following terms, representations, agreements, and provisions:

. . . .

(b)      [GFP] shall at the Effective Date assume and be responsible for and comply with all duties and obligations of [Gaywood], express or implied, with respect to the Assets, including without limitation, those arising under or by virtue of any lease, contract, agreement, document . . . .

---

[6]In addition to not containing the Della Crim Lease, and the inconsistencies with the Finney and J.M. Finney Leases noted in footnote 3, the Exhibit A to the Energy Assignment does not appear to contain the B Brooks Lease, RRC 08585, the JT Brown-A- Lease, RRC 06856, and the Geo. Thompson-A- Lease, RRC 07998, listed in MJR's Schedule of Leases.

[7]The Energy Assignment was pursuant to a Deed in Lieu of Foreclosure Agreement dated October 1, 2002, between Energy, American Realty Investors, Inc., its lender, and Richard A Dickerson, guarantor.

[8]Exhibit A to the Gaywood Assignment also contained the inconsistencies regarding the Finney and J.M. Finney Leases noted in footnote 3.

It also provided that "[t]he provisions of this Assignment shall be binding on and inure to the benefit of [Gaywood] and [GFP] and their respective . . . . successors and assigns and shall constitute covenants running with the Lands and the Assets."

By an Assignment, Conveyance, and Bill of Sale executed March 14, 2013, GFP conveyed its interest in certain oil and gas properties in Gregg and Rusk Counties to AriesOne (the GFP Assignment). Prior to its assignment to AriesOne, GFP notified MJR of the pending transfer by letter dated March 11, 2013. In pertinent part, the letter provided:

> GFP . . . hereby notifies MJR . . . of the receipt of an offer to purchase all of its oil and gas interests and assets in Gregg & Rusk counties (the "Assets"). The Assets and the transaction are described in a letter of intent and assignment and bill of sale (the "LOI & Assignment") signed with AriesOne [] . . . , the relevant pages of which are attached hereto, to close a transaction on or about March 13, 2013[,] but no later than March 31, 2013.
>
> . . . .
>
> To the extent that MRJ has a right of refusal to purchase the [sic] some of these properties on the same terms as [AriesOne], please let us know if you intend to exercise any such rights at your earliest convenience. If it is not your intention, kindly sign below and return to us by fax.

At the bottom of the page, Michael J. Ryan, Managing Member of MJR, affirmed that "MJR . . . [would] not exercise any [ROFRs] the [sic] purchase the Assets per the terms of the LOI and Assignment signed with [AriesOne] if such transaction would close prior to March 31, 2013."

7

The GFP Assignment conveyed all of GFP's interest in certain oil and gas properties, including some of the leases in dispute in this case.[9] It does not contain any direct or indirect reference to the ORRI Assignment or the Settlement Agreement.

In their motions for summary judgment, SND acknowledged that it was assigned an interest in five of the leases in dispute that were formerly owned by Energy, and Miken acknowledged that it received an assignment of two of the leases in dispute.

## III. Procedural Background

MJR filed a motion for partial summary judgment on liability against AriesOne only and argued that AriesOne was bound by MJR's ROFR because it was a covenant running with the land. AriesOne responded, arguing that it was not bound because MJR's ROFR was not a covenant running with the land, that it was an unreasonable restraint on alienation, and that it violated the statute of frauds. AriesOne also filed traditional and no-evidence motions for summary judgment in which it adopted the arguments and evidence set forth in its response to MJR's motion for partial summary judgment in support of its traditional motion. The trial court granted AriesOne's traditional motion for summary judgment, denied its no-evidence motion, and denied MJR's motion for partial summary judgment on liability.

SND, GFP, and Miken then filed traditional and no-evidence motions for summary judgment in which they incorporated the evidence filed by AriesOne and asserted the same arguments made by AriesOne in support of their motions for traditional summary judgment. After

---

[9]In addition to the inconsistencies regarding the Finney and J.M. Finney Leases noted in footnote 3, Exhibit A to the GFP Assignment does not contain the Pine Hill School Lease, RRC 07592, the Tuttle-A- Lease, RRC06167, the J.B. Watson Lease, RRC 08407, the Daisie Bradford Lease, RRC 08027, the L.B. Morse Lease, RRC 08068, or the Plowman Lease, RRC 08652, listed in MJR's Schedule of Leases.

MJR filed responses to these motions, the parties entered a Rule 11 Agreement in which AriesOne, SND, GFP, and Miken agreed to withdraw their motions for summary judgment, insofar as they asserted grounds other than that MJR's ROFR was not a covenant running with the land, and agreed to non-suit any counterclaims previously asserted. In the Rule 11 Agreement, MJR stipulated, without prejudice to challenge the trial court's ruling, that all defendants were entitled to summary judgment on that ground, based on the trial court's summary judgment in favor of AriesOne, and agreed to release all defendants from its unpaid royalty claims. The parties then filed a joint motion for final judgment reaffirming the agreements contained in the Rule 11 Agreement and requesting the trial court to enter summary judgment in favor of SND, GFP, and Miken and to enter a final judgment.

The trial court then granted SND's, GFP's, and Miken's motions for traditional summary judgment, based solely on the ground that the ROFR was not a covenant running with the land. The summary judgment also provided, "All other grounds for summary judgment asserted in Defendants' Motions have been withdrawn or are denied without prejudice." That same day, the trial court signed a final judgment ordering that MJR take nothing on its claims.

## IV. Analysis

### A. Whether the ROFR Was a Covenant Running with the Land

"In Texas, a real property covenant runs with the land when it touches and concerns the land, it relates to a thing in existence or specifically binds the parties and their assigns, it is intended by the parties to run with the land, and the successor to the burden has notice." *MPH Prod. Co.*, *v. Smith*, No. 06-11-00085-CV, 2012 WL 1813467, at *2 (Tex. App.—Texarkana May 18, 2012,

9

no pet.) (mem. op.) (citing *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187 (Tex. App.—Texarkana 2003, pet. denied)). In addition, there must be privity of estate, which "means there must be a mutual or successive relationship to the same rights of property." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.3d 903, 910–11(Tex. 1982); *MPH Prod. Co.*, 2012 WL 1813467, at *2.

"[F]or a covenant to run with the land, the parties creating the covenant must intend for it to do so." *MPH Prod. Co.*, 2012 WL 1813467, at *3 (citing *Rolling Lands Invs., L.C.*, 111 S.W.3d 187). When we look at the instrument granting the ROFR, we interpret it in favor of the grantee. *Id.* (citing *Humble Oil & Ref. v. Harrison*, 205 S.W.2d 355 (Tex. 1947)). When the instrument is unambiguous, "the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968) (citations omitted). "A contract is not ambiguous simply because the parties disagree over its meaning."[10] *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Further, when construing an instrument, a court is "to take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract." *City of Pinehurst*, 432 S.W.2d at 519.

---

[10]The parties in this case do not contend that the Settlement Agreement or the ORRI Assignment are ambiguous.

As seen above, MJR's ROFR was created in the Settlement Agreement between Energy and MJR. The Settlement Agreement initially provides for certain conveyances of oil and gas leases and other property between the parties, including the conveyance by Energy of certain ORRI to MJR. The Settlement Agreement then addresses certain continuing obligations of Energy, including its obligation to give MJR a ROFR as to any planned assignment, farmout, sale, or transfer of any lease in which MJR has an interest. If MJR did not exercise its option to purchase the lease, the ROFR provides that "[a]s a condition precedent to the transfer, and transferee shall be required to agree to be bound by the obligations to MJR contained in [the Settlement Agreement] as it pertains to any interest transferred." The Settlement Agreement went on to provide that it "shall be binding upon and inure to the benefit of the parties, and all of their respective assigns [and] successors."

Appellees argue that the absence of any mention in the provision granting the ROFR that it runs with the land, or that it applies to Energy's assigns and successors, indicates that the parties did not intend for the covenant to run with the land.[11] However, we have previously held that while the use of such terminology "is helpful in determining intent," it is not dispositive, "and an obligation intended to run with the land can be created without such language." *MPH Prod. Co.*, 2012 WL 1813467, at *5 (citing *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 395 (Tex. App.—Texarkana 1999, pet. denied)). Nevertheless, the Settlement Agreement

---

[11]SND also believes that it is significant that the ROFR appears only in the Settlement Agreement and not in a "granting document," but it does not explain what effect this should have on our decision. To the extent it is arguing that a covenant running with the land must be contained in a deed or assignment, Texas law is to the contrary. *See Westland Oil Dev. Corp.*, 637 S.W.3d at 910 (holding that a contract to convey interests in oil and gas leases contained in an unrecorded letter agreement was a covenant running with the land).

contains language that indicates the parties intended the ROFR to be a continuing obligation of both Energy and its assigns. First, the paragraph granting the ROFR provides that any transferee of any of the leases must agree to be bound by all the obligations in the Settlement Agreement. Since this refers to transferees of the leases, which were owned by Energy, this refers to the assigns and successors of Energy and evidences the intent of the parties that the ROFR would be a continuing obligation of these assigns and successors. This conclusion is strengthened by the placement of this clause within the paragraph granting MJR its ROFR. In addition, the Settlement Agreement specifically provides that it is binding on the parties and their assigns and successors. While not dispositive, this is yet another indication that the parties to the grant of the ROFR intended that it would be a covenant running with the land. *See id.* at *3.

Our conclusion that the parties intended the ROFR to be a covenant running with the land is also evidenced in the ORRI Assignment, executed simultaneously with the Settlement Agreement. In accord with Energy's continuing obligations under the Settlement Agreement, the ORRI Assignment directs any purchaser of production from the leases to issue division orders to MJR covering the ORRI and to pay MJR directly for its royalty interest. Immediately following this direction, the ORRI Assignment provides:

> ASSIGNOR [Energy] agrees that this obligation *is a covenant running with the land* and *any transfer by ASSIGNOR*, *its successors or assigns* must include this right of direct payment *as well as* all the accounting obligations set out in the Settlement and Release Agreement executed this date by ASSIGNEE and ASSIGNOR *and any assignee or successor in interest* must agree to be bound by the terms of the Settlement and Release Agreement as a condition precedent to the transfer of any of the Properties.

12

(Emphasis added). The ORRI Assignment also provides that its terms "will be binding upon the parties, and upon their respective successors and assigns." Again, this language indicates that the parties intended the continuing obligations of the Settlement Agreement to be covenants running with the land and the continuing obligation of Energy, its successors and assigns.[12] These obligations would include the ROFR.[13]

For these reasons, we conclude that the parties to the grant of the ROFR intended that it be a covenant running with the land.

To be a covenant running with the land, "[t]here must also be privity of estate between the parties when the covenant was established." *Id.* at *2 (citing *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, writ denied)). In addition, several courts have held that the covenant "must be contained in a grant of land or in a grant of some property interest in the land." *Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App.—Tyler 2013, no pet.) (citing *Wayne Harwell Props.*, 945 S.W.2d at 218 (citing *Panhandle & S.F. Ry. v. Wiggins*, 161 S.W.2d 501 (Tex. Civ. App.—Amarillo 1942, writ ref'd w.o.m.))). We have held that "[a]n option to purchase land creates an interest in land." *Madera Prod. Co. v. Atl. Richfield Co.*, 107 S.W.3d 652, 660 (Tex. App.—Texarkana 2003, pet. denied in part & dism'd in part) (citing *Hitchcock Props. v. Levering*, 776 S.W.2d 236, 238–39 (Tex. App.—Houston [1st Dist.] 1976, writ denied)). The granting of a ROFR is an option to purchase an

---

[12]Appellees argue that "running with the land" only refers to the right of direct royalty payments to MJR, referenced in the preceding sentence. While it undoubtedly refers to the direct payments, the sentence goes on to provide that any transfer must also include the accounting obligations and other obligations set forth in the Settlement Agreement.

[13]To be clear, here we are only addressing the parties *intent*, and not whether each of the obligations set forth in the Settlement Agreement meet the other requirements necessary to qualify as a covenant running with the land.

interest in land. *See MPH Prod. Co.*, 2012 WL 1813467, at *2. Therefore, there is privity of estate between Energy and MJR.

There must also be privity of estate between the parties to the grant of the covenant and those against whom the covenant is sought to be enforced. *Wasson Interests, Ltd.*, 405 S.W.3d at 973. Thus, "there must be a mutual or successive relationship to the same rights of property" between Energy and the Appellees of the disputed leases burdened with the ROFR. *Westland Oil Dev. Corp.*, 637 S.W.3d at 910–11; *see MPH Prod. Co.*, 2012 WL 1813467, at *2. In this case, the summary judgment evidence shows that the Settlement Agreement and the ORRI Assignment were executed May 5, 2002, and made effective as of May 1, 2002. The ORRI Assignment was filed of record in Gregg County and Rusk County June 3, 2002, and May 31, 2002, respectively. Energy assigned some of the leases burdened by the ROFR to Gaylord October 1, 2002. As seen above, at least some of these leases were ultimately assigned to Appellees. Thus, there is a successive relationship to the same rights in some of the leases burdened by the ROFR between Energy and the Appellees. Accordingly, to the extent an unbroken chain of title has been established between Energy and the Appellees, there is privity of estate between these parties.

A covenant touches and concerns the land when it affects the nature, quality, or value of what is conveyed, or if it either renders the grantor's interest in the land less valuable or renders the grantee's interest more valuable. *Westland Oil Dev. Corp.*, 637 S.W.3d at 911. In this case, Energy conveyed various ORRI in the leases to MJR and granted it a ROFR in the event Energy or its assigns and successors sought to transfer their interest in the leases. The option to purchase

14

all of Energy's interest in the leases undoubtedly increased the value of MJR's ORRI. We find that the ROFR touches and concerns the land.

Further, the covenant must relate to a thing in existence to be a covenant running with the land. *MPH Prod. Co.*, 2012 WL 1813467, at \*2. The ROFR burdened Energy's interest in the oil and gas leases that were subject to MJR's ORRI. Energy's interest in the oil and gas leases existed at the time of the grant of the ROFR. Therefore, the covenant related to a thing in existence.[14]

Finally, the successor in interest must have notice of the covenant running with the land. *Id.* The Texas Supreme Court has held that the rule in Texas is that "a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." *Westland Oil Dev. Corp.*, 637 S.W.3d at 908 (quoting *Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668 (Tex. Civ. App.—Eastland 1952, writ ref'd)). Consequently, a reference to other documents contained in a document in the purchaser's chain of title puts it on inquiry, and it "is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained." *Id.* (quoting *Loomis v. Cobb*, 159 S.W. 305 (Tex. Civ. App.—El Paso 1913, writ ref'd)).

In this case, since the ORRI Assignment affects the interest in the leases owned by Energy, it is essential in determining what interest in the leases a purchaser from Energy or its assigns

---

[14]AriesOne argues that MJR's ORRI was not in existence at the time of the grant of the ROFR. However, as previously noted, a fully executed copy of the ORRI Assignment was attached to the Settlement Agreement. This shows that the ORRI Assignment was executed before, or simultaneously with, the execution of the Settlement Agreement. In either instance, MJR's ORRI was in existence at the time of the grant of its ROFR.

15

receives in the transfer. Thus, the ORRI Assignment is an essential link in the chain of title of Energy's assigns. The ORRI Assignment references the Settlement Agreement and recites that any transferee of Energy's interest in the oil and gas leases must agree to be bound by the terms of the Settlement Agreement as a condition precedent to the transfer. In addition, the Gaylord Assignment provided: "(b) [GFP] shall at the Effective Date assume and be responsible for and comply with all duties and obligations of [Gaywood], express or implied, with respect to the Assets, including without limitation, those arising under or by virtue of *any* lease, *contract*, *agreement*, document . . . ." (emphasis added). Thus, it was the duty of GFP, AriesOne, and their assigns to investigate the terms of the Settlement Agreement, and they are charged with notice of its contents. *See id.* An investigation of the Settlement Agreement would have revealed the existence of a ROFR and that it was binding on the assigns and successors of Energy. Therefore, to the extent that an unbroken chain of title has been shown from Energy to the Appellees, Appellees are charged with notice of the ROFR.[15]

Since MJR's ROFR satisfies all of the elements, we hold that it is a covenant running with the land. Consequently, we hold that the trial court erred in granting summary judgment to GFP, Miken, and SND.[16] We also hold that AriesOne's argument that the ROFR was not a covenant running with the land does not support the trial court's summary judgment in its favor.

---

[15]As noted earlier, GFP honored MJR's ROFR before the transfer of any interest in the leases to AriesOne. Therefore, GFP also had actual notice of the covenant. No summary judgment evidence shows that any other Appellee had actual notice of the covenant.

[16]Although GFP, Miken, and SND assert other grounds to support their summary judgment, the trial court's summary judgment specified that it was based only on the ground that the ROFR was not a covenant running with the land. When a summary judgment "specifies the ground relied on for the trial court's ruling, the summary judgment can be affirmed only if the specified ground is meritorious, otherwise the case must be remanded." *Matter of Marriage of*

16

### B. AriesOne's Other Grounds Do Not Support Its Summary Judgment

AriesOne also asserted that MJR's ROFR is void because (1) it is an unreasonable restraint on alienation and (2) it violates the statute of frauds. AriesOne argues that the unlimited duration of the ROFR is a major consideration in determining whether it is an unreasonable restraint on alienation. AriesOne also argues that since it makes no provision for the allocation of the purchase price between leases burdened by the ROFR, and those that are not, in a package sale of leases that contains both, it would hinder the commercial development of the leases. Further, it argues that the possibility of MJR's ORRI, to which the ROFR is tied, being divided among numerous assignees of MJR would present insurmountable difficulties in locating and notifying each assignee of any potential transfer of the leases.

Regarding its last argument, we are not presented with that situation. Under the facts of this case, we need only consider whether the ROFR is an unreasonable restraint on alienation when MJR seeks to enforce it. A different case might be presented if MJR had assigned its ORRI to multiple assignees, and those assignees were seeking to enforce the ROFR. We need not entertain a hypothetical case that may never happen.

In addition, although the ROFR does not address the allocation of leases burdened by the ROFR, and those that are not, in a package sale of leases, this does not render the restraint unreasonable as a matter of law. Although in a package sale of leases, issues may arise regarding what constitutes a proper presentment of the bona fide offer made by a third party purchaser to the

---

*Banks*, 887 S.W.2d 160, 162 (Tex. App.—Texarkana 1994, no writ) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380–81 (Tex. 1993)).

17

ROFR owner, and what leases the ROFR owner may elect to purchase under the ROFR, AriesOne has cited no cases, and we have found none, that hold that the ROFR is an unreasonable restraint on alienation because it does not address this possibility. Further, Texas courts have demonstrated that they are well-equipped to resolve these issues, even though the ROFR is silent regarding package deals. *See McMillan v. Dooley*, 144 S.W.3d 159, 177–81 (Tex. App.—Eastland 2004, pet. denied).

Finally, we agree that the duration of a ROFR is an important consideration in determining whether it is an unreasonable restraint on alienation. *See Mattern v. Herzog*, 367 S.W.2d 312, 314–16 (Tex. 1963); *Randolph v. Terrell*, 768 S.W.2d 736, 739 (Tex. App.—Tyler 1987, writ denied). The Restatement (Second) of Property[17] provides that a ROFR is not a restraint on alienation if its terms are reasonable as to both (1) the price the owner of the ROFR must pay and (2) the duration of the time allowed for the exercise of the ROFR.[18] RESTATEMENT (SECOND) OF PROPERTY § 4.4 (1983). Although AriesOne argues that the ROFR is of unlimited duration, since it is tied to MJR's ORRI in the leases, it is necessarily limited to the duration of the individual leases in which MJR owns an ORRI. To determine whether this is unreasonable, we must consider all the circumstances of the creation of the ROFR and the purposes which it was intended to serve. *See Mattern*, 367 S.W.2d at 313–15. However, there is no evidence of the circumstances of the

---

[17]In determining whether a covenant is an unreasonable restraint on alienation, Texas courts look to the Restatement for guidance. *Meduna v. Holder*, No. 03-02-00781-CV, 2003 WL 22964270, at *3 n.5 (Tex. App.—Austin Dec. 18, 2003, pet. denied) (mem. op.).

[18]The second prong refers to the duration of the ROFR itself, not, as argued by MJR, the amount of time the owner of the ROFR has to exercise its option to purchase after it is notified of a bona fide offer. *See Randolph*, 768 S.W.2d at 739.

18

ROFR's creation or the purposes intended, except the recitals contained in the Settlement Agreement. These recitations are insufficient to establish that the duration of the ROFR is unreasonable as a matter of law. Therefore, we find that this ground does not support the summary judgment in favor of AriesOne.

AriesOne also asserted that the ROFR violates the statute of frauds. On appeal, as in the trial court, AriesOne argues that the absence of an allocation between burdened and non-burdened leases in a package sale violates the statute of frauds. AriesOne cites no case authority,[19] and we have found no Texas cases that support this argument. On this record, we cannot say that AriesOne established as a matter of law that the ROFR violates the statute of frauds. Therefore, this ground will not support the summary judgment in its favor.

Since none of the grounds asserted in AriesOne's motion for summary judgment will support its summary judgment, we find that the trial court erred in granting summary judgment in favor of AriesOne.

### C.    MJR's Motion for Partial Summary Judgment

MJR's motion for partial summary judgment against AriesOne was denied by the trial court. The sole ground stated in its motion was that the ROFR was a covenant running with the land. Since we have held that the ROFR was a covenant running with the land, we must determine

---

[19]AriesOne merely includes the following quote from a law review article:  "[S]ound draftsmanship requires that the manner of its application to a package oil and gas transaction be specifically articulated in the preferential purchase right."  Harry M. Reasoner, *Preferential Purchase Rights in Oil and Gas Instruments*, 46 TEX. L. REV. 57, 60 (1967). The complete sentence states, "Whether required by the Statute of Frauds or not, sound draftsmanship requires that the manner of its application to a package oil and gas transaction be specifically articulated in the preferential purchase right."  *Id.*

whether MJR has established that there is no genuine issue of material fact so that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848.

In its motion, MJR asserts that it acquired ORRI in the following leases from Energy in the ORRI Assignment:

(1)     Boyd (RRC No. 06068), Gregg County

(2)     Cheesebrough (RRC No. 06271), Gregg County

(3)     Elder (RRC No. 08029), Gregg County

(4)     Hays-Martin (RRC No. 07542), Gregg County

(5)     Tooke-A- (RRC No. 06164), Gregg County

(6)     Bean (RRC No. 08351), Rusk County

(7)     Brett (RRC No. 07306), Rusk County

(8)     Brightwell-A- (RRC No. 06070), Rusk County

(9)     Brooks (RRC No. 08585), Rusk County

(10)    Brown, JT-A- (RRC No. 06856), Rusk County

(11)    Crim (RRC No. 07947), Rusk County

(12)    Finney (RRC No. 08192), Rusk County

(13)    Finney, J.M. (RRC No. 07437), Rusk County

(14)    Giles-A- (RRC No. 06107), Rusk County

(15)    Holland (RRC No. 06115), Rusk County

20

(16)    Moore, W.P. Est. (RRC No. 08390), Rusk County

(17)    Thompson, Geo-A- (RRC No. 07998), Rusk County

(18)    Wooley (RRC No. 07070), Rusk County

However, as we previously noted, the ORRI Assignment did not include at least one of these leases.  For the leases not included in the ORRI Assignment, MJR has not established that the ROFR applies to them.

In addition, although AriesOne admitted owning these leases for a period of time, as we noted above, the Energy Assignment does not include several of these leases.  Hence, for these leases, MJR has not established an unbroken chain of title from Energy to AriesOne.  Since an unbroken chain of title has not been shown, MJR has not established that there is privity of estate between Energy and AriesOne, or that AriesOne is charged with notice of its ROFR.  In addition, MJR has not produced any summary judgment evidence showing that AriesOne had actual notice of its ROFR.  Therefore, genuine issues of material fact remain on these issues.

We find that MJR did not establish that it is entitled to partial summary judgment against AriesOne.  Therefore, we find that the trial court did not err in denying MJR's motion for partial summary judgment.

For the reasons stated, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.


                                        Bailey C. Moseley
                                        Justice


Date Submitted:     June 4, 2018
Date Decided:       June 22, 2018